UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENTUCKIANA REPORTERS, LLC | ) | CHAPTER 11 |
| | ) | |
| Debtor | ) | CASE NO. 10-34168 |
| | ) | |

### DEBTOR'S TRIAL BRIEF OBJECTING TO MICHELE OWENS' MOTION TO HOLD DEBTOR IN CONTEMPT AND FOR ATTORNEY FEES

\* \* \* \* \* \*

Comes now the Debtor, Kentuckiana Reporters, LLC and for its objection to Michele Owens' motion to hold the Debtor in contempt and for attorney fees, states as follows:

1. The Debtor is fully aware that this Court has not looked kindly on this case. However, the Debtor's sole intent in filing this case was to keep its doors open and to continue to provide employment for its 21 employees. Without the filing of this Chapter 11, this case would not have settled, and the Debtor would not be in business today. The Debtor is appreciative to the Court for allowing the settlement to be finalized.

2. In every case, once a settlement amount is reached, the parties must then negotiate a release and settlement agreement. Because of the time consuming process of drafting the agreement, it is rarely done simultaneously with agreeing on the settlement amount. The settlement agreement in this case did not involve just Ms. Owens and the Debtor, but involved third parties that counsel for Debtor did not represent and who are adversarial to both the Debtor and Ms. Owens. In addition, Ms. Owens demanded that all pending appeals be terminated. This was an extremely

complex matter and made even more complex by the pending appeal of Fidelity and Deposit Company of Maryland ("FDCM").

3. The following summary of events will hopefully show this Court that the Debtor did not act in bad faith nor intentionally delay the settlement in this case. The Debtor's intent was the same as Ms. Owens', to resolve all of the pending litigation and get this matter totally behind them.

4. On January 14, 2011, Ms. Owens and the Debtor reached an agreement as to the amount of their settlement. On January 18, 2011, the parties advised this Court of their agreement. At this point the parties had agreed only on the payout to Ms. Owens and both counsel acknowledged that a release and settlement agreement needed to be prepared. Mr. Hoskins, counsel for Ms. Owens stated to counsel for Debtor, "Why don't you take the first crack at drafting the agreement."

5. On February 2, 2011, Mr. Hoskins replied to Debtor's counsel's first attempt at drafting the settlement agreement. Mr. Hoskins stated that there was one major issue and several minor ones. (See Hoskins email dated February 2, 2011, Exhibit 1).

6. The major issue that needed to be addressed according to Mr. Hoskins related to the FDCM appeal. Mr. Hoskins indicated that unless the Debtor reached an agreement with FDCM or indemnified Ms. Owens, it was a show-stopper. (See Hoskins February 2, 2011 correspondence, Exhibit 2).

7. At this point the Debtor began active negotiations with FDCM so as to comply with the demand made by Mr. Hoskins in his February 2, 2011 correspondence.

8. Mr. Hoskins was advised that active negotiations were taking place between the Debtor and FDCM and on February 14, 2011, Mr. Hoskins agreed to extend the time to finalize the settlement until February 21, 2011.

9. On February 21, 2011, Mr. Hoskins was again advised of the status of the negotiations with FDCM, and he agreed to extend the time to finalize the settlement again until February 28, 2011.

10. It must be pointed out that Mr. Hoskins agreed to these extensions contingent upon monies being placed in Debtor's counsel's escrow account. The Debtor had no objection with this contingency, but the settlement was being paid by the current owner of the Debtor and the former owner of the Debtor and the former owner refused to place any monies in the Debtor's escrow account until a release and settlement agreement were finalized. At this time a release and settlement agreement could not be finalized until a separate settlement agreement was reached with FDCM. The refusal of the former owner to place monies into escrow was out of the control of the Debtor, and this information was again communicated to Mr. Hoskins in an email from Debtor's counsel to Mr. Hoskins dated February 25, 2011.

11. Again, Mr. Hoskins agreed to extend the time until March 4, 2011 to receive the settlement funds to allow the Debtor to finalize its settlement with FDCM. As before, this was contingent upon placing monies in escrow.

12. At this time the Debtor was able to reach a settlement with FDCM wherein it would pay to FDCM a substantial sum of money and in exchange, FDCM would dismiss its appeal and release all parties including Ms. Owens. In order to accomplish this, FDCM required a mutual release from all parties. Mr. Hoskins informed the Debtor's counsel at this time that his client would not release FDCM and for the first time, advised that Ms. Owens intended to sue FDCM for bad faith. Thus, Mr. Hoskins, as indicated in his letter of February 2, 2011, wanted a release for his client from FDCM but never intended to provide FDCM a release. If Mr. Hoskins had provided that information in early February, my client would not have spent almost a month working on a settlement with FDCM that could not be consummated without mutual releases from all parties. It

was at this time that Ms. Owens made her motion to enforce the settlement agreement and to hold the Debtor in contempt and for attorney fees.

13.     Owens has not asked for sanctions under Rule 9011, and attorney fees are not proper under the inherent power of the Court to sanction the parties before it.  See *In Re U.S. Voting Mach., Inc.*, 224 B.R. 165, 169 (Bankr. D. Colo. 1998).

14.     The Debtor acknowledges that Rule 9011 is not the exclusive avenue available to a Court for the imposition of sanctions.  Courts still retain the inherent power to impose monetary sanctions for conduct determined by the Court to be abusive, unwarranted or in bad faith.  The Court possesses broad authority...to take any action that is necessary or appropriate to prevent an abuse of process (citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 2007) (quoting 11 U.S.C. §105a).

15.     This was a very complicated case, and a very complicated settlement that involved numerous parties as evidenced by the Final Settlement and General Release Agreement.  (Exhibit 3).  The actions of the Debtor as shown above were not abusive, unwarranted or in bad faith and Ms. Owens should not be entitled to attorney fees in reference to the extensive settlement negotiations related to the release and settlement agreement.

16.     The settlement funds have been paid to Ms. Owens and a settlement agreement has been agreed upon between the Debtor and Ms. Owens.  If this Court were to award attorney fees in every instance that a settlement did not timely occur, it would be inundated.

WHEREFORE, Debtor, Kentuckiana Reporters, LLC moves this Court to overrule Michele Owens' Motion for Contempt and Imposition of Attorney Fees.

Respectfully submitted,

/s/ Neil C. Bordy
NEIL C. BORDY
SEILLER WATERMAN LLC
Meidinger Tower - 22nd Floor
462 S. Fourth Street
Louisville, KY 40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: bordy@derbycitylaw.com
Attorneys for Debtor

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2011, a true and correct copy of the foregoing was (a) mailed electronically through the U.S. Bankruptcy Court's ECF system at the electronic addresses as set forth in the ECF system to the U.S. Trustee and all other persons receiving electronic notifications in this case, and (b) mailed, first-class, postage prepaid, to those persons, if any, identified in the Court's Notice of Electronic Filing who do not receive electronic notice but are entitled to be served and to all scheduled creditors.

/s/ Neil C. Bordy
NEIL C. BORDY

G:\doc\NCB\KYIANA REPORTERS\Pldgs\Obj to Owens Atty Fees.wpd